Good morning, Your Honor. Good morning. Please, the Court. My name is Scott Calvert, and I represent plaintiff appellant Selina Bryant. The purpose of ERISA is to protect and promote the interests of planned participants and beneficiaries such as Ms. Bryant. The district court's ruling should be overturned because it creates perverse incentive for Cigna and other claims administrators and health insurers to deny valid claims, knowing that the worst thing that can happen to them is that years later they will eventually have to pay only a fraction of the medical bills originally due and pay no attorney's fees. Meanwhile, claimants such as Ms. Bryant pay the price in ruined credit ratings and years of harassing telephone calls from bill collectors. If the lower court decision is affirmed, eventually no attorneys will reasonably agree to represent health insurance, ERISA-based health insurance claimants such as Ms. Bryant, knowing an insurer can deny a valid claim but then post-litigation simply negotiate a discounted payment to the provider, bypassing any payment to the claimant in an attorney's fees award. The district court's ruling essentially gives Cigna and other ERISA administrators a path to risk-free undeserved profits. Are you asking us to remand for the purpose of getting Cigna to pay the benefits directly to your client, now that they have already been paid to the hospital? I believe that they can pay. That is one possibility. They can also be ordered to pay. How can we possibly do that? Because that's clearly double recovery under our case law, isn't it? It is, Your Honor. However, this is not a – this is not something that wasn't warranted to them that they could have. In the middle of litigation, they could have interpled the disputed fees to the court and the court and Ms. Bryant could have worked out something with the hospital. I'm just not understanding why you didn't declare victory and put in your application for attorney's fees once Cigna went ahead and paid the hospital. Why didn't you say to the district judge at that point, we've won, we got what we wanted, can we please have our attorney's fees? Well, if that's the court – if that's going to be the outcome here, if that's the path that this court wants to do – I don't know what we're going to do, but I'd like to know why you didn't do that. Well, I think because the decision to pay the provider directly was in violation of the planned documents that Cigna instructed to Ms. Bryant. But if your point is she's being harassed and she's no longer going to be harassed because the hospital's been paid, you've won. That's correct, Your Honor. In theory, however, there was a large gap between when that happened and when Ms. Bryant was informed of that. Cigna refused to tell Ms. Bryant that that had happened. She refused to say the amount that was paid to the provider. Counsel, your second argument is that you did achieve some success on the merits. Correct, Your Honor. And that because of that, because you achieved your result, you're entitled to peace. Yes, Your Honor. Right? That is one argument. And you did make that argument below. We did. Yes, Your Honor. The purpose of the lawsuit was to have the medical bills that should have been paid in 2007 or 2008 when the hospital submitted its second claim to Cigna paid at that time. However, Cigna refused to do that. Because they refused to do that before the lawsuit was filed. But so after that was done, then she did achieve some success on the merits, and therefore attorney's fees should be applied. If that is done, then while Cigna will not – there could be no double recovery if there's not an order for Cigna to pay any additional benefits to Bryant, but attorney's fees are paid, then that can remove the perverse incentives that the lower court decision adopts whereas, you know, allowing an administrator to just simply wait to deny a claim and then pay no attorney's fees. Talk to us specifically about whether you achieved enough so that it was an abuse of discretion for the district court not to give you attorney's fees. I believe it was, Your Honor. Prior to the litigation, the hospital was coming after Ms. Bryant for $88,688. Cigna had – even though Cigna had received claims from the hospital in 2007 and in 2008, it had refused to pay the claims and subsequently apparently lost the records of those claims. The hospital has the records. We learned about them through the hospital. Counsel, I just want to drill down on this part of your argument because I find it very confounding to figure out what the district court did or did not consider and specifically whether the hospital records were considered as a part of the administrative record. Case one of this opinion says that the hospital confirmed she was insured and that's very clear from the hospital records. And then it says, however, after the hospital submitted her claim to Cigna in August 2007, Cigna refused to pay the claim. This second sentence about the refusal to pay the claim only comes from the hospital record. It can't come from the insurance company's file. Their position was consistent, that they never received a claim and they never denied the claim, certainly not in 2007. So it looks to me on page one that the district court was considering the hospital record. Did you have a clear ruling one way or another about whether the hospital record was or was not being considered? I don't believe so, Your Honor. Your Honor, I believe that the lower court kind of picked and chose when it wanted to. For the main part of the ruling, it limited the record to just the documents, the unauthenticated administrative record presented by Cigna. But at other points in the opinion, it referred to plaintiff's extrinsic evidence and used those against the plaintiff. The plaintiff never really got the benefit of all of the records that it gathered regarding the claim unless from those portions of the record that perhaps didn't go her way. The hospital log and the insurance company log make very clear, and the depositions of those two persons most knowledgeable, make very clear that the insurance company pre-approved her for coverage and then was actually quite active in monitoring her care and approving the level of care and gathering all of the information about the medical care she was receiving, how many days she was or was not going to receive coverage in the ICU, and so forth. Correct, Your Honor. But it's only from the hospital record that we see that there was a submission of the claim by certified mail and then follow-up telephonically with dates and specific information about who called and whatnot. None of that appears in the insurance company. Yes, Your Honor. Yes, Your Honor, and that's one of the problems. I think that, you know, through the deposition of the PMK for Cigna, we realize, you know, they admitted that they had record-keeping problems in the past, and I understand they're a big company and, you know, no big organization is perfect. I'm not asking for perfection. But when mistakes are made, then, you know, there must be consequences for those mistakes. So let me ask you there, because we have the district court found a structural conflict, because this is not unusual, a plan with an administrator under the same roof. Yes, Your Honor. What's the insurance or, forgive me, what's the plan administrator's obligation to maintain that file? Did you ask the district court to take notice of or to include the missing records that were not in the insurance file but were in the hospital record? Yes, Your Honor. With the trial court briefing, declarations were submitted, and all of that evidence was offered to the court. Did you get a definitive ruling about whether it would be considered as part of the administrative record? No trial was held, Your Honor. The court took it on a briefing. So whatever was in the – the opportunity was not presented. I mean, we asked the district court judge to make sure to include everything and to consider everything in the administrative record. The administrative record is supposed to be a history of what happened. But because Cygnus recordkeeping didn't include the entire history, we wanted to supplement it through the PMK deposition. And tellingly, during litigation, they never disputed that we can take that – that we can take those depositions so that, you know, it was improper for us to seek the hospital's records. So we submitted all of those things to the court. But because there was no actual trial, it was – the court took it under advisement on the briefing. That specific question couldn't be asked. What role, if any, did it play that the hospital, at some point, sent a letter regarding the claim and had the wrong patient number on the claim? Is that when Cygnus recordkeeping fell off the map? No, because there's no actual evidence that there was dropped records before that and everything stopped after that. There was one occasion where the hospital person did note that there was one number off, but that was only on one occasion. There were telephone calls before that and there were telephone calls after that. But Cygnus simply just, you know, dropped the ball there and didn't pay the claim, even though, you know, they previously had information that a claim was submitted and had preapproval for all the treatment that she received after her car accident. Counsel, did your client pay anything to the hospital that was not reimbursed? No, Your Honor. She didn't have any money, so basically she just got harassed by bill collectors and had her credit rating ruined. She didn't pay any money to the hospital. But it's clear that she owes nothing at this point. The hospital is no longer claiming an unpaid bill? Yes. As of the middle of the litigation, that was the determination. Up until the litigation was filed and after the complaint was filed, the hospital was still coming after her. It was only after she filed the complaint to make sure Cygnus paid the bills. And then Cygnus... Which they did. Which they did very quickly. But then trying to keep that information secret from Ms. Bryant, they didn't want Ms. Bryant to know that they didn't pay the entire amount. Wait a minute. They paid whatever she was required to pay, they paid. It may or may not have been the same amount. I'm sorry, Your Honor. They didn't pay what she was required to pay. They extinguished her obligation, Counsel, right? She got her benefits. They extinguished the bill, right? That's correct. But by waiting three years, they were able to pay a much reduced amount because when a bill goes to collection, a hospital is happy to get anything. How did that harm your client? That's what Judge O'Scanlan is getting at. How did that harm your client? It harms the client because it creates an incentive for them to keep doing that every time, to hold on to their money from your client. She's only got one policy. They always have an incentive to try to reduce the bill. It harmed the client because she had her damaged credit rating for three years and she had hospital bills hounding her. You mean because it was the delay? The delay, yes. That's different than the reduction. If the bill went unsatisfied, regardless of the amount of the bill, if it went unsatisfied for a period of time, long enough to land on your client's credit report, I understand that that harms her. That's your argument. But my colleagues are asking a different question, and that is how did it harm your client that they negotiated a reduced total and satisfied that reduced total? Well, it's not that it harmed her, but if that is allowed to stand without any award to her or even an attorney's fees award against Cigna, then it creates an incentive for Cigna and other health insurers to follow that course of action over time. Are you a private attorney general? No, Your Honor, but only participants have the right to enforce the plan, and if the plan isn't enforced under its terms and under the terms of ERISA, then if they can keep pointing back to this decision every single time to say, well, as long as we extinguished the amount due at the end of time, no harm, no foul, but at that point, what incentive is there for other plaintiffs to take cases knowing that they file a complaint, Cigna is going to run to the hospital, ask to pay a 50 percent reduced bill, eventually pay 80 percent, but then there's no benefit to plaintiff or her attorneys that complain whenever you're filed in the first instance. All true. All entirely irrelevant to your client. The delay is what hurt your client. The delay, not the reduction. Yes, Your Honor, but — And the success that you're arguing on your second argument about that you achieved some successes, you got the bill paid and it took you four years to get it paid, right? Yes, Your Honor. Okay. One more question I need to ask you. The district court commented on Siglick's March 4, 2010 letter stating that it had no claim in its system, and then it dropped a footnote saying there was an astounding absence of any documentation showing that upon receiving this letter, plaintiff or her counsel attempted to address the issue that Siglick had no claim for plaintiff on file. Yes, Your Honor. I'd just like you to comment on that. Well, Your Honor, I think what the district court did is it mistakenly removed the obligation that Cigna has to its claimants and put it on the plaintiff. Cigna and an insurance administrator has the right, has the obligation to look out, has a fiduciary duty to the participants and to offer them, to look out, to have a duty of loyalty and to look out in their honor. If Cigna wants a claim, Cigna should say, you know, you said you had a claim but we don't have any records. Here, submit a claim, or here are the attorney, you know, invite. Cigna should have instructed Ms. Bryant to invite a claim, either to provide her with a copy of claim documents to just say, you know, provide a claim or, you know, have more information or even have the hospital call us. Cigna has the obligation as an ERISA administrator, as a claims administrator, to make sure that a plaintiff, you know, to make sure that ERISA provisions are followed. That is not the requirement of the plaintiff or, quite frankly, her counsel. Let's get practical. Why was nothing done when they said the claim was going to be disclaimed, that we have no information on this? Why was nothing done? Well, I wasn't firm at the time, but I believe that they were frustrated by Cigna not responding to letters, not providing any information. Cigna just said, well, we don't have anything. But that wasn't even true. Cigna's own records, if they would have gone back and looked, said that they had information from the hospital, but Cigna decided just to forget that and put that on the plaintiff. But Cigna doesn't have that right. Well, Cigna's records actually don't even include a denial of the claim, ever. Exactly, which is another problem. I think they don't get the benefit of the CFR and the abuse of discretion and discretion or Jebby, and if there's no denial, you don't get that benefit. I would like to observe it. Just quickly, you're speaking of Firestone, that because they didn't deny, we don't give them the abuse of discretion benefit of the doubt. Is that correct? Correct, Your Honor. Thank you. Thank you. Good morning, and may it please the Court. William Donovan on behalf of Cigna. If I may, I would like to start by addressing Judge Kogan's question. I think what the district court found was that Ms. Bryant and her counsel made a series of mistakes, which resulted in a predicament. That the record was the hospital and Ms. Bryant had not been able at any time to produce a claim that was actually submitted, a denial of that claim, and as we all know, if there was a denial of the claim, a timely appeal. But, counsel, they do have a log showing that they sent it to your client, certified mail, and they have a log that shows the date and the name of the person who confirmed telephonically that Cigna was going to deny coverage after having pre-approved it. And, Your Honor, in footnote two of the district court's opinion, the district court correctly found that the hospital admitted that they had the wrong patient ID in their system. The second time. The second time. And that goes back to the other point. Were the hospital records considered or not considered? It seems to be quite inconsistent to me. Your Honor, addressing your question, on page one of the opinion, it appears that what the district court was doing was just repeating the allegations that were made, not making findings. Because that order starts by saying, or that paragraph, this lawsuit arises out of the following allegations. There is a reference, Your Honor, in footnote two on the next page, to the data error that the hospital had made. But the original number was given correctly to the hospital that's in the hospital insurance company, and on that basis, coverage was pre-approved. I would agree with you, Your Honor. It appears the correct number was given for pre-approval, but at the time of the submission of the claim, the wrong number was used. Was the claim submitted or not? There is no evidence that they can show that Cigna received the claim. Cigna obviously has no record of the claim. But you just said at the time the claim was submitted, a wrong patient number was given. I'm just trying to understand your client's position. Our position, Your Honor, is Cigna never received a claim as defined under ERISA. And the only thing that the hospital or Ms. Bryant had was a sort of log suggesting that one had been sent using the wrong patient ID number. Well, they also had a log suggesting that it was sent via certified mail, and they have uncontested testimony from both of the, to be fair, both of the deponents indicated there was any number of ways to pull up your insured's name in the system. Your Honor, I would agree with you there would be a series of ways to get, to access information in the system. Her name, her date of birth, her social security number, that was uncontested. Your deponent was quite candid about that. She was candid about it, Your Honor, but I think in being candid, admitting nothing that hurts Cigna's case here. The reality is to save judicial resources, to save a lot of time, energy, and money, what's supposed to happen is there's a full process below. If there was a claim and there really was a denial, where's the appeal? Where's the claim? Where's the denial? But if you carefully sculpt the administrative record so it's missing the key documents and then you go, well, look, based on the administrative record, there's nothing there, you've created a self-fulfilling prophecy. Your Honor, respectfully, I would disagree because if there really was a claim and there really was a denial, the hospital would have it and they didn't have one. They didn't produce one. They didn't have the log. They produced a log that indicates the claim was submitted, Counselor. And there's evidence that suggests the log itself is incorrect. What is that evidence, Counselor? That the patient ID number for Ms. Bryant was incorrect. Well, in one place, but where is there any indication that the two log entries that we're referring to are incorrect? I'm referring to the one indicating that a claim was sent certified mail in writing and that an individual by name on June, I can give you the date, called to verify with Cigna and was told that the claim was going to be denied. Is there any indication that those log entries are inaccurate? There is no evidence either way, quite frankly, as to whether the log is accurate or not accurate. There is a log. I will grant you there is a log. I think in terms of exercising discretion in denying fees to Ms. Bryant's counsel, the district court was very concerned about the fact that the letter exchanged with Cigna indicated there was no claim. And in response to that, Ms. Bryant's counsel did not provide the most basic information. Her name, her patient ID number, the treatment location, a copy of the bills. I think if any of that happened, we wouldn't be here today because the claim would have been adjudicated at that time and not gone through the litigation process. Whereas the panel noted in response to opposing counsel's questions, even when they were told that the claim had been paid, Ms. Bryant had been released, they persisted in forcing us to spend thousands and thousands of dollars in fees. Well, that might go to the amount of insurance fees that they can recover, but the fact of the matter is without this lawsuit, that claim would have never been paid, right? In our view, Your Honor, there was no claim that was ever made before the lawsuit. Well, what about your own records that show that Ms. Bryant called herself on this account? There is indication that a call was made. The details, Ms. Bryant got treatment, as I understand it, numerous times, but not just one time. So I think the issue that we're grappling with here, they talked about perverse incentives that there's no fee. From our perspective, they're asking this panel to say, without being able to produce to any of us a claim or a denial which the hospital would have if it existed, without having taken an appeal, by ignoring Cigna's correspondence for nine months, and then when the case is filed without any of those documents, Cigna acts proactively and gets the matter resolved, that somehow there's a fee award in there. I think if the ruling goes the other way and they get fees, then you're giving very little incentive to any ERISA plaintiff's counsel to resolve the matter prior to litigation being filed. It would go the other way. Ms. Bryant wrote herself asking for copies of her policy and her plan, and those letters were ignored. Cigna responded to correspondence and gave a copy of the plan,  What about in response to her letter that preceded her lawyer's letter? I think that Cigna attempted to respond to her letter and attempted to get her the information she wanted. I would admit to you, and partly because we don't have a claim or a denial, that the administrative record is not as full and detailed as it would normally be. I would acknowledge that, Your Honor. But I think on the core issue, it is, in our view, a dangerous precedent where they're here asking for fees and double recovery when they can't even produce that there was a claim or a denial. I'm just having a hard time avoiding the inference from the nature of the hospital log and the testimony of the hospital representative and the testimony of Siglid that, in fact, there was a claim. It just seems to jump out that there was a claim. Maybe misaddressed, maybe sent to the wrong place, but how can we say there was no claim sent to Siglid? Well, Your Honor, if there was a claim that they say is out there that was sent to the wrong address or it was never received, then there's no obligation to pay attorneys' fees. There's certainly no obligation if it didn't get there. Well, why? Why is that, counsel? Because we have another log entry indicating, and I think it's uncontested because the insurance company's own file confirms that there was preauthorization for care and quite a lot of monitoring by the insurance company about the care. They knew the diagnostic codes and the nature of the injuries and the number of days she was there and on and on. So quite a lot of follow-up. And then a log entry in the hospital record indicating that telephonically there had been confirmation that the insurance company wasn't going to pay, but it's taking the position that she was not insured after all. Your Honor, I would submit that the inference we would draw from that last statement you read is that there's a disconnect between the log that the hospital had. Because if Cigna is doing as they say, right, being proactive, paying attention, focusing on level of care and preapproving, Cigna would have had no basis to deny the claim. Well, it didn't. There's no question this woman was always covered, right? There's no question. According to your person most knowledgeable, she was always covered. That's correct. Okay. So what the person at Ciglec knew is that there had been preauthorization and then a position was being, according to the insurance company's records, and then telephonically the coverage was denied. Your Honor, respectfully, I think that the core disconnect here is I think that phone call does not relate to Ms. Bryant or does not relate to this coverage. There's no way logically it would. And denial of a claim is not done verbally. It's done in writing so there's something to appeal. That goes back to your client perhaps not keeping careful records. That's the catch-22 we're trying to get around. Well, I would suggest that the catch-22 they're trying to create is based on NU&L. And particularly when the hospital admits that there was an error in their system in how they coded her, that we would say the only evidence of an actual error that existed was on the hospital side. The hospital is not going to take a verbal denial of a claim. That's not how the system works. It's in writing and they should have had something in writing.  but why Cigna, having known in advance and pre-cleared this coverage, didn't follow up let's say a month or two or three after this hospitalization occurred? Your Honor, it's a very good question. I think what happens is there is such a big volume of claims that I think that the plant administrator relies upon the provider to submit the claim. And in this case, I acknowledge the facts are unique. They are somewhat troubling. No one wishes that Ms. Bryant had to deal with a collection agent. But I candidly think that there is no real evidence that Cigna was provided with a claim and total litigation was filed and they did the right thing. Is it too much to ask that once the pre-approval is given and then someone starts complaining about I'm getting done by a hospital or I don't have information on this, that Cigna should go back and see if there's anything on this person that might smack up a claim so that it can say to her, you know, we don't have a claim on this. Your Honor, it does appear that there was some attempt to do exactly what you say. Where is that attempt? Well, I think in the phone log, if it really relates to Ms. Bryant, you know, again, we are trying to reconstruct what happened because in a typical ERISA case, as we all know, there would be a clear record, a clear claim, a clear denial and an appeal and the appeal presumably would not have been sustained, would not have been granted in full. I think the problem with the inferences is the inferences that they're asking you to draw are not really based upon the record and I would suggest that Cigna did the right thing on the pre-authorization and the monitoring. Cigna told Ms. Bryant's counsel clear as day, we don't have a claim. Well, that was four years later. Several years later, not four, but several. Three and a half, okay. Correct. And then for nine months after that, Ms. Bryant's counsel didn't say, here are the hospital bills, here's the date of when she was in the hospital, here's the name of the provider, here's your patient ID number. No dispute. I understand that. And that becomes, from our perspective, the problem with awarding them fees because as the, you know, it was a colorful word, astounding, that the district court used, but that creates very bad incentives if a counsel in this case can sort of act in an astounding way, then file the suit, and, of course, Cigna does the right thing, proactively contacts the hospital, they get this paid, we provide notice to Ms. Bryant and her counsel that it's been paid, she's been released, she's got no liability, and then litigated this case for five months and then an appeal. Can't you take care of that disincentive simply by reducing the amount of the fee award? I don't think so, Your Honor. I mean, we asked for, thinking that the district court was as frustrated as we were, we asked for our own fee award, and we cited to Your Honors three cases in which, when there was culpable conduct by the prosecuting counsel, that there had been awards against them. We think there's going to be any award in this case that should go in our favor because the district court was absolutely correct that there was an astounding lack of effort before the case was filed, and then for months and months and months after we gave them the notice that Your Honors were pointing out in questioning to opposing counsel this matter had been resolved, they forced Cigna to spend thousands of dollars defending the claim. At best, we think they should get a wash and we all walk away. At worst, we think that they should have to pay our fees at least after June 30th, 2011, when Mr. McKinnon, who was lead counsel on the case, said in a sworn affidavit that's in the record that he knew that she had been released, he knew there was no liability, but they were persisting with this double recovery theory, which obviously had no basis in fact or law. Should the hospital records be considered? In this case, it probably gives me more heartburn than they are, quite frankly. Don't they have to be? I think, Your Honor, we're not arguing there's a mistake by the district court to consider them, but I would submit that they have to rely on these inferences to try to get anywhere in this case when, in fact, there's no basis to lead to the conclusion that they want their owners to go to. Thank you, counsel. Thank you very much. Your Honor, I just want to make a couple of points. First, I think you can see that Cigna is trying to get out of this based on one error made by the hospital. They were one digit off on one submission they made to Cigna. That error and the lack of follow-up from your law firm. Okay. Your Honor, I was focusing on what happened from the hospital, but yes. But they still had other information. Even when, you know, you cite that there was a lack of error from the law firm, in their March 2000 letter, they had told Ms. Bryant that they knew the dates that she was covered, so they could have gone back in their records and see if there was a claim submitted themselves. It's not Ms. Bryant's responsibility or her counsel's responsibility to make sure a claim is submitted. They need to provide her with the opportunity. They didn't need to invite a claim. Why did they say, you say there's a claim, we can't find it, submit more information? They just said, here's your plan documents, and they provided the wrong plan documents. Counsel, the opposing counsel is making the argument that your firm wasn't trying to be a problem solver, and my colleague is suggesting that perhaps that's a reason for a reduced award of fees. Even if we find that she did achieve some success on the merits. Do you want an opportunity to respond to that? Yes, Your Honor. I believe, again, it goes back to that while, you know, you may say that our firm was not trying to be a problem solver, it is not our obligation under ERISA, and I'm not saying we don't have an obligation to the court, but it is not our obligation under ERISA to make sure that a claim is submitted. Counsel, they didn't even know what plan you needed, because you hadn't told them in the letter when your client had had an accident. Well, that's not true, Your Honor, because they knew which plan, because in that March letter, they said she has coverage from X date to X date, so if they had those dates, they knew what plan she was under. They knew which plan, maybe not which plan documents, but they knew which plan. And as to the, and I want to focus on their request for attorney's fees. Because you're out of time. Okay. The three cases they cited are the, there was plenty of bad actions there by all the attorneys. They don't, some of those cases don't apply to ERISA. Those cases shouldn't apply here. You know, we weren't pursuing frivolous litigation. We weren't pursuing this, you know, there wasn't an arrest due to caught issue as there wasn't one of the cases. We were just trying to fight for Ms. Bryant and fight for her rights and fight for other plan participants so that there's not the perverse incentives pursuant to deny claims in hopes that they will profit down the line. Thank you very much, Your Honor. Thank you both. Okay. Case is submitted and we'll go on to the final case on the calendar.
judges: Cogan, O'scannlain, Christen